UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| COASTAL PLAINS PORK, LLC, | Case No. 09-8367-8-RDD |
| Debtor | |

**EMERGENCY MOTION FOR ORDER AUTHORIZING SALE OF WEANED PIGS AND PROCEDURE FOR LIQUIDATION OF LIVESTOCK FREE AND CLEAR OF LIENS AND GRANTING RELATED RELIEF**

Coastal Plains Pork, LLC, debtor and debtor-in-possession in the above-captioned case (the "Debtor"), hereby moves this Court (the "Motion") under sections 105(a) and 363(b), (f), and (m) and 365 of title 11 of the United States Code (the "Bankruptcy Code") for the entry of an *ex parte* order allowing the sale of sows free and clear of liens, approving an agreement for the sale of weaned pigs, authorizing the negotiation of joint checks, and establishing procedures to consummate the sale of the Debtor's livestock as set forth herein free and clear of liens. In support of this Motion, the Debtor respectfully represents as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 1 57(b)(2)(A), (M), (N), and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b), (f), and (m) of the Bankruptcy Code.

## BACKGROUND

3.  On September 28, 2009 (the "Petition Date"), the Debtor filed its voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.  The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee, trustee, or examiner has been appointed in these cases.

## NEED FOR SALES PROCEDURES

5.  As reflected in the Motion of Debtor-in-Possession for Emergency and Final Order (1) Authorizing the Debtor-in-Possession to (A) Enter in to Post-Petition Loan and (B) to Use Cash Collateral and (II) Granting Related Relief (the "Cash Collateral Motion") filed simultaneously with this Motion, the Debtor does not have borrowing availability under its loan with First National Bank of Omaha ("FNBO"), is in default of the FNBO credit facility and must liquidate its assets in an expeditious manner. The Debtor proposes to wind down and sell its livestock over the next twenty-six (26) weeks beginning the week ending September 20, 2009.

6.  At this time, the Debtor owns approximately 21,000 sows in North Carolina and will have approximately 200,000 weaned pigs to sell over the next (26) twenty-six weeks. The Debtor also owns 5,200 sows, 11,000 finishing pigs and 48,000 weaned pigs to sell from a farm in Arkansas called Cypress. Generally, the Debtor would retain it sow herd if its was continuing in business and would send its weaned pigs to Iowa, as well as four farms in Arkansas, where growers have contracted with the Debtor to "finish" the hogs and care for them to a selling weigh of 275 pounds. It generally takes six (6) months to grow a weaned pig to selling weight.

7. As the pigs are finished in Iowa they will be sold in the ordinary course of business for the best price available. Tyson Foods, Inc. and Triumph Foods, Inc. buy most of the Debtor's finished hogs.

8. Mr. Greg Brown, president of the Debtor is currently negotiating with brokers and other parties to locate buyers for the weaned pigs and sows. Due to the desperate market conditions for swine, the market is currently saturated with animals for sale, and finding the best price is a matter of timing and negotiation. Mr. Brown estimates that the weaned pigs will be sold at the rate of approximately 10,000 per week and the sows will be sold at a rate of 900 per week for the next twenty-six (26) weeks.

9. As also discussed in the Cash Collateral Motion, the Debtor believes that FNBO holds a first priority lien on all of the Debtor's livestock and other personal property assets. After payment of estimated expenses to fund the grower payments, feeding, transporting, and other direct costs, as well as the overhead, the estimated recovery from the livestock is $12 million dollars. Other than the livestock the only valuable asset of the Debtor is its office and feed mill valued at $400,000 to $600,000. Upon information and belief, the only other party holding a valid lien on the North Carolina livestock is Cooperative Credit Company ("CCC") which is owed $3.0 million.

10. Two feed mills from Iowa, Farmers Cooperative Society ("FCS") and Cooperative Elevator Association ("CEA") have filed liens under Iowa law on the livestock in Iowa, and several checks have been issued by one or more buyers of livestock made payable to the Debtor, CEA and FCS. Each of the feed mills is owed approximately $750,000.

11. Several growers in Iowa and North Carolina have also filed liens under state law, but the liens only provide for payment for livestock currently in the possession of the

3

grower. The Debtor expects that hearings will be held promptly to determine the validity and priority of the feed mill and grower liens.

12. FNBO is currently owed approximately $17,000,000,[1] and FNBO will allow use of cash collateral and advance funds as discussed in the Cash Collateral Motion to support the liquidation. The Debtor does not believe FNBO will be paid in full from the liquidation of its collateral.

## RELIEF REQUESTED

13. By this Motion, the Debtor is requesting the approval of the sale of weaned pigs negotiated by the Debtor pre-petition, the entry of an *ex parte* order allowing the sale of sows, an order allowing negotiation of joint checks, and an order approving procedures to proceed with sale of the livestock free and clear of any and all liens.

14. Due to the exigency of the situation, it will be impossible for the Debtor to seek court approval of each negotiated sale of the livestock because the sales are arranged largely through brokers and are negotiated based upon needs in the marketplace. Furthermore, it is critical for the Debtor to be able to sell its pigs without any issues related to liens that would impair the sale of its livestock to buyers, including but not limited to the sale of finished pigs to Triumph Foods, Inc. and Tyson Foods, Inc.

### (a) Weaned Pig Agreement

15. The Debtor has negotiated a contract, attached hereto as Exhibit A, to sell weaned pigs at eight of its North Carolina Sow Farms and at Cypress in Arkansas to L.L. Parks Livestock, Inc. (the "Purchaser") for $30 per head (the "Agreement") subject to specific discounts. Pending approval of the Agreement, the Purchaser will pay $20.00 per head, less

---

[1] Less amounts paid through draws on letter of credit provided by non-debtors.

4

discounts as appropriate under the Agreement. When the Court approves the Agreement, the Purchaser will pay the additional $10.00 per head for the piglets purchased before Court approval is obtained.

16. FNBO has reviewed and approved the Agreement. The Agreement provides the Debtor with a ready and willing buyer of almost all of the weaned pigs at a very good price.

17. The Debtor began selling the weaned pigs under the Agreement immediately pre-petition and seeks this Court's approval of the sole assumption of Agreement under sections 363 and 365 of the Bankruptcy Code. The Purchaser has no connections or relationship with the Debtor, and the Debtor believes that the Agreement provides a fair and reasonable proposal for the sale of the weaned pigs as discussed in the Agreement.

18. Transactions such as the Agreement, which are outside the ordinary course of the Debtor's business, arguably require Court approval pursuant to section 363(b)(1) of the Bankruptcy Code. However, it will be administratively burdensome to the Court and costly for the Debtor's estate, especially in light of the large number of transactions that potentially may be required to liquidate the livestock. Further, in certain cases, the costs and delays associated with seeking Court approval of a sale potentially would eliminate, or substantially undermine, the economic benefits of the transaction.

(b) **Sale of North Carolina Sows Free and Clear of Liens**

19. The Debtor is selling its sows on a weekly basis to brokers at market prices and transportation is arranged to take the sows to market. The North Carolina Growers represented by Stubbs and Perdue, have refused to release the sows and may argue that they have lien rights under N. C. Gen. Stat. §44A-2(c) that would be lost by release of the sows. The owners of Cypress Pork, LLC which houses sows owned by Debtor in Arkansas, also

5

represented by Stubbs and Perdue, may also take a similar position. The Debtor will prepare consent order for execution by FNBO, the North Carolina Growers and CCC allowing sale of the sows free of any liens and preserving the rights of any lienholders. Hopefully, this consent order will be tendered to the Court for immediate consideration.

### (c) Negotiation of Joint Checks

20.    The Debtor is holding several checks issues by Tyson Foods, Inc. and/or Triumph Foods, Inc. which are made jointly payable to the Debtor, FNBO, CCC, FCS, and FCA. The Debtor seeks permission to negotiate the checks and deposit them in FNBO subject to the preservation of any lien rights which these parties may have in the funds and subject to future orders of this Court.

### (d) Expedited Notice Procedure

21.    To lessen the burdens and costs associated with obtaining individual Court approval, the Debtor hereby seeks Court approval of the procedures described herein (the "Expedited Procedures") to complete discrete sales of livestock, other than arms length market sales, within specified notice proceedings. The Debtor proposes to utilize the Expedited Procedures to obtain more flexible, expeditious and cost-effective review by interested parties, in lieu of individual Court approval.

22.    Furthermore, the Debtor seeks approval to sell its livestock free and clear of all liens to allow purchasers, including but not limited to Tyson and Triumph, to accept the livestock and provide payment to the Debtor without concern for the assertion of various liens by growers or other parties.

23. Any proceeds realized from the sale of the Debtor's assets pursuant to the Expedited Procedures will be applied in accordance with the requirements set forth in this Court's order, the Cash Collateral Motion and applicable bankruptcy and non-bankruptcy law.

24. After the Debtor enters into a contract or contracts to sell livestock other than market sales of sows or finished pigs, subject to the Expedited Procedure, the Debtor will file a notice of the Expedited Sale with the Court and serve the Sale Notice by electronic mail or telecopier on FNBO, CCC, the Farmers Cooperative Society, Cooperative Elevator Association, Agstar, the Bankruptcy Administrator, and the Guarantors of the FNBO debt (collectively, the "Interested Parties"). If a Committee is appointed and counsel is retained, the counsel will also be added as an Interested Party.

25. The Expedited Sale Notice will include the following information with respect to the proposed sale:

- a description of the livestock that are the subject of the Expedited Sale;
- the identity of the non-debtor party or parties to the Expedited Sale and any relationships of the party or parties with the Debtor;
- the major economic terms and conditions of the Expedited Sale;[2] and
- instructions consistent with the terms described below regarding the procedures to assert objections to the Expedited Sale ("Objections").

26. Interested Parties will have two (2) business days after receipt of the Notice (the "Notice Period") to object to the Expedited Sale pursuant to the objection procedures described below. If no Objections are properly asserted prior to the expiration of the Notice Period, the Debtor will be authorized, without further notice and without further Court approval, to consummate the Expedited Sale in accordance with the terms and conditions of the underlying

---

[2] This information may be provided by attaching the applicable agreement or agreements to the Expedited Sale Notice.

7

agreement or agreements. Upon the expiration of the Notice Period without the assertion of any Objections, the Expedited Sale will be deemed final and fully authorized by the Court.

27. If any material economic terms of an Expedited Sale are amended after transmittal of the Expedited Sale Notice, but prior to the expiration of the Notice Period, the Debtor must send a revised Expedited Sale Notice to all Interested Parties describing the Expedited Sale, as amended. If a revised Expedited Sale Notice is required, the Notice Period will be extended until the expiration of two (2) business days following the date of transmittal of such Expedited Notice.

28. Any Objections to an Expedited Sale must be in writing, filed with the Court and served on the Interested Parties and counsel to the Debtor so as to be received prior to expiration of the Notice Period. Each Objection must state with specificity the grounds for the Objection. If an Objection to an Expedited Sale is properly filed and served, the Expedited Sale may not proceed absent (a) withdrawal of the Objection, (b) entry of an order of the Court specifically approving the Expedited Sale or (c) the submission of a Consent Order (defined below) in accordance with the procedures described below.

29. Any Objections may be resolved without a hearing by an order of the Court submitted on a consensual basis by the Debtor and the objecting party (a "Consent Order"); provided, however, that if any material economic terms of the Expedited Sale are modified by the Consent Order, the Debtor must, prior to submission of the Consent Order, (a) provide the Interested Parties with two (2) business days' prior notice of the Consent Order and an opportunity to object to the terms of the Consent Order by providing a written statement of objection to the Debtor's counsel and (b) certified to the Court that (i) such notice was given and (ii) no Interested Party asserted an objection to the Consent Order. If an Objection is not

8

resolved on a consensual basis, the Debtor or the objecting party may schedule the Proposed Expedited Sale and the Objection for hearing at a date specifically requested or at the next available hearing date by giving at least two (2) days written notice of the hearing to each of the Interested Parties.

30.   All buyers will take the livestock sold by the Debtor pursuant to this Motion and the Expedited Procedures free and clear of Liens, claims, encumbrances and other interests, pursuant to section 363(f) of the Bankruptcy Code. All such Liens, claims, encumbrances and other interests will attach to the proceeds of the sale. The Court will determine the validity of Liens such that parties are protected in their right to payment from proceeds.

## BASIS FOR RELIEF

### A.   Sale Of The Assets Is A Product Of The Debtor's Reasonable Business Judgment

31.   Section 363(b)(1) of the Bankruptcy Code provides: "The Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

32.   A proposed sale of the assets of a debtor under section 363 of the Bankruptcy Code outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the trustee or debtor-in-possession. See In re Abbotts Dairies of Pa., 788 F.2d 143 (3d Cir. 1986); In re WBQ Partnership, 189 B.R. 97, 102-03 (Bankr. E.D. Va. 1995) (citing In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991) and holding that the following four factors may be considered by a court in determining whether

9

there is a sound business purpose for an asset sale: (1) a sound business reason or emergency justifies a reconfirmation sale; (2) the sale has been proposed in good faith; (3) adequate and reasonable notice of the sale has been provided to interested parties; and (4) the purchase price is fair and reasonable").

33.     The proposed procedures for sales of the Debtor's livestock meet the "sound business reason" test. First, sound business purposes justify the sales. The Debtor believe that a prompt sale of the livestock presents the best opportunity to realize the maximum value of the estates' assets.

**B.     Sale Of The Assets Should Be Free And Clear Of Liens**

34.     Pursuant to section 363(f) of the Bankruptcy Code, the Debtor seeks authority to sell and transfer the livestock free and clear of all Liens, with such Liens to attach to the proceeds of the sale of the livestock, subject to any rights and defenses of the Debtor and other parties in interest with respect thereto.

35.     A sale free and clear of Liens is necessary to maximize the value of the Debtor's assets. A sale subject to Liens would prevent the Debtor from selling the animals, as evidenced by the requirement of the Agreement that the sale be free and clear of liens.

36.     A sale free and clear of Liens is particularly appropriate under the circumstances because any Lien in, to or against the Debtor's assets that exists immediately prior to the closing of any sales will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtor or any party in interest. Thus, the proposed sales satisfy sections 363(f) of the Bankruptcy Code. Moreover, any holder of a Lien that receives notice of the sales and which fails to object to the

sales of the Debtor's assets free and clear of Liens should be deemed to consent to the sales, thereby complying with section 363(f)(2) of the Bankruptcy Code.

37. Accordingly, the Debtor submits that the notice to be provided is reasonable and appropriate and will be adequate to ensure that all interested parties have the opportunity to object to the proposed sale of the Debtor's assets.

## NOTICE

38. Notice of the hearing on this Motion has been by telecopy or overnight mail to: (a) FNBO, the Debtor's primary secured lender; (b) Cooperative Credit Company; (c) The North Carolina Agricultural Finance Authority; (d) AGSTAR Financial Services; (e) the top twenty unsecured creditors; (f) the Bankruptcy Administrator for the Eastern District of North Carolina; and (g) the Guarantors of the FNBO debt. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

WHEREFORE, for the foregoing reasons, the Debtor respectfully request that the Court immediately enter an order that approves the Agreement, an ex parte consent order allowing sale of sows, negotiation of joint checks, and the Expedited Sale Procedures, all permitting sale of all livestock free and clear of liens as set forth herein, and such other relief as the Court deems appropriate.

This the 28th day of September, 2009.

                NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ Terri L. Gardner
     Terri L. Gardner
     N.C. State Bar No. 9809
     Joseph M. Lischwe
     N.C. State Bar No. 13308
     Post Office Box 30519
     Raleigh, NC 27622-0519
     (919) 329-3000
     Counsel for Coastal Plains Pork, LLC